UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**CHARLENE GEHRING**,

        Plaintiff,

   v.

**CAROLYN COLVIN, Acting Commissioner, Social Security Administration**,

        Defendant.

Case No. 2:14-cv-01830-KI

OPINION AND ORDER

   Rory Linerud
   Linerud Law Firm
   P.O. Box 1105
   Salem, OR 97308

       Attorney for Plaintiff

   Billy J. Williams
   United States Attorney
   District of Oregon
   Janice E. Hebert
   Assistant United States Attorney

Page 1 - OPINION AND ORDER

>    1000 SW Third Ave., Ste. 600
>    Portland, OR 97204-2902
>
>    Leisa A. Wolf
>    Special Assistant United States Attorney
>    Office of the General Counsel
>    Social Security Administration
>    701 Fifth Ave., Ste. 2900 M/S 221A
>    Seattle, WA 98104-7075
>
>        Attorneys for Defendant

KING, Judge:

Plaintiff Charlene Gehring brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

Gehring protectively filed an application for DIB on January 11, 2010, alleging disability beginning June 1, 2007. The application was denied initially and upon reconsideration. After a timely request for a hearing, Gehring, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on February 21, 2012. Hearings were also held on May 3, July 23, and finally on August 8, 2012 in an effort to obtain medical expert testimony.

On August 23, 2012, the ALJ issued a decision finding Gehring not disabled within the meaning of the Act and therefore not entitled to benefits because she failed to show she became disabled on or before her date last insured of March 31, 2009. This decision became the final

decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on September 12, 2014.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.

Page 3 - OPINION AND ORDER

§§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  *Parra*, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

Page 4 - OPINION AND ORDER

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ identified only the severe impairment of back pain. He concluded Gehring's other complaints of hypertension, vertigo, Bell's palsy, Meniere's disease and other conditions were not severe impairments as of Gehring's date last insured. The ALJ also found Gehring's impairment did not meet or equal any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ concluded Gehring could perform the full range of medium work. Such work requires: lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing or walking about six hours in an eight-hour work day; sitting about six hours in an eight-hour work day; and unlimited pushing or pulling with the bilateral upper and lower extremities within medium exertional level lifting and carrying weight descriptions. Given this residual functional capacity ("RFC"), although Gehring had no relevant past work, the ALJ found Gehring could perform other work in the national economy such as cook helper, dishwasher, and hand packer.

Page 5 - OPINION AND ORDER

**FACTS**

Fifty-eight years old on her alleged onset date of disability, Gehring had been a military wife and had moved around much of her working life. As a result, her work history consisted of part-time work as a clerk in a food store, a retail sales clerk, and an accounting instructor. She has a high school diploma.

Gehring sought treatment from a chiropractor for her neck and back pain from October of 2002 to August of 2009; she found the treatments helpful. She was in a rollover car accident in 2004. At that time, she reported achiness in her left upper back as well as shoulder pain, both of which worsened when lying down. She had significant hypertension. By January 2005, Gehring's back pain had improved and she felt she had returned to pre-accident status.

In January 2010, nearly ten months after her date last insured, Gehring reported to the emergency room complaining of pain and ringing in her left ear, left side facial numbness, and dizziness. The impression was TIA and hypertension. She followed up with her primary care provider Jacquelyn Serrano, M.D., continuing to complain of vertigo, numbness in her left jaw and cheek, and deafness in her left ear. Gehring reported a history of chronic hypertension. Gehring was initially assessed with hypertension, essential and malignant; CVA with left facial hemiparesis; vertigo/dizziness with tinnitus and hearing loss; hyperlipidemia; and obesity.

In March 2010, however, Richard Flaiz, M.D., noted that the symptoms compelling Gehring to the emergency room were actually caused by a virus, although he agreed she had vascular, cholesterol, and hypertension issues as well. Later that month, Dr. Serrano reported Gehring had been "healthy until this year when she developed severe blood pressure problems."

Tr. 545.  In June 2010, Gehring reported to her physical therapist experiencing zero pain, with her worst pain at a level two.

**DISCUSSION**

I.     <u>Severe Impairments</u>

Gehring contends the ALJ erred in treating her hypertension as a non-severe impairment. A medically determinable impairment must be established through signs, symptoms, and medically acceptable clinical or laboratory findings but under no circumstances can be established through symptoms, namely the individual's own perception of the impact of the impairment, alone.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  Additionally, in order to constitute a "severe" impairment, the impairment must have "more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities."  SSR 85-28, 1985 WL 56856, at *3 (January 1, 1985); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) (restating policy that "an impairment(s) is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."). Nevertheless, the threshold at step two is a low one.  It is a "de minimis screening device [used] to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation omitted).

The ALJ discussed Gehring's hypertension, noting that the records did not indicate any treatment for the impairment, nor any complications from it.  Gehring disputes this conclusion. However, the ALJ relied on the testimony of medical expert, Joselyn E. Bailey, M.D., who

Page 7 - OPINION AND ORDER

testified that while the medical records reflect Gehring's history of high blood pressure, they did not provide any evidence indicative of disability.

Gehring also points to evidence that when she was hospitalized in January 2010, she was thought to have left ventricular hypertrophy from "longstanding, uncontrolled hypertension." Tr. 483. The ALJ addressed this issue, noting that Gehring's symptoms were later determined to be caused by a viral infection, rather than hypertension. Tr. 22. Gehring does not offer any evidence to dispute this later, corrected diagnosis.

In sum, the ALJ's determination that Gehring did not have a medically severe impairment of hypertension is supported by substantial evidence in the record. As a result, the ALJ did not commit any legal error.

II.     Residual Functional Capacity

Even if the hypertension is not a severe impairment, Gehring contends the ALJ should have considered it in assessing her RFC. Gehring speculates the ALJ would have found her more limited and unable to perform medium level work had he adequately accounted for her hypertension. Additionally, Gehring asserts the RFC is not based on any evidence, suggesting the ALJ made it up out of whole cloth. She insists no evidence supports a conclusion that she is capable of performing medium work.

RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day, five days a week, or equivalent. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). RFC is the most a person can do in spite of limitations or restrictions. *Id.* "The RFC assessment must

include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* at *2.

Gehring points to no medical evidence or opinion supporting the notion that her hypertension caused additional limitations that should have been included in the RFC. As for medical evidence supporting the RFC, the ALJ relied on Dr. Bailey's testimony in concluding that Gehring had no physical or mental limitations of any consequence. Gehring does not challenge the ALJ's decision to give great weight to Dr. Bailey's opinion, and she has no contrary medical opinion to rely on. Accordingly, the ALJ's RFC is consistent with the medical evidence. The ALJ did not err.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___13th___ day of January, 2016.

                                                                    /s/ Garr M. King
                                                                   Garr M. King
                                                                   United States District Judge